Exhibit 34

# Exhibit 34

DOCKET NO. FST-CV-08-5008432-S : SUPERIOR COURT

US BANK NATIONAL ASSOCIATION AS : JUDICIAL DISTRICT OF
TRUSTEE : STAMFORD/NORWALK

V. : AT STAMFORD

ELIZABETH P. CONRAD, ET AL. : JANUARY 20, 2016

<u>OBJECTION TO DEFENDANT'S MOTION TO DISMISS
BASED ON A LACK OF COMPLIANCE WITH THE
EMERGENCY MORTGAGE ASSISTANCE PROGRAM</u>

The Plaintiff hereby objects to the Defendant's Motion to Dismiss dated September 11,

2015.

A.      FACTUAL BACKGROUND

This action was commenced by way of writ, summons and complaint dated August 12,

2008 and bearing a return date of September 2, 2008.

The complaint alleges that on July 21, 2006 the Defendant, Elizabeth P. Conrad

executed and delivered a Note in the original principal amount of $460,000.00 to Mortgage

Lenders Network USA, Inc..  <u>See</u>, Complaint, ¶ 3.   On said date to secure said Note the

Defendant(s), Elizabeth P. Conrad and John W. Conrad, did execute and deliver to Mortgage

Electronic Registration Systems, Inc. as Nominee for Mortgage Lenders Network USA, Inc., a

Mortgage on the Property.  Said Mortgage was dated July 21, 2006 and recorded July 26, 2006

in Volume 8649 at Page 11 of the Stamford Land Records.  Said Mortgage was assigned to US

ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

Bank National Association as Trustee by virtue of an Assignment of Mortgage to be recorded on the Stamford Land Records.  <u>See</u>, Complaint, ¶ 4.

The complaint further alleges that Said Note is in default and the Plaintiff, US Bank National Association as Trustee as the holder of said Mortgage and Note has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note.  <u>See</u>, Complaint, ¶ 5. The Plaintiff has provided written notice in accordance with the Note and Mortgage to the Defendant(s) of the default under the Note and Mortgage, but said Defendant(s) have failed and neglected to cure the default.  The Plaintiff has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said Note. <u>See</u>, Complaint, ¶ 6.

Thereafter on January 12, 2009, this court entered judgment of foreclosure inclusive of finding compliance with the Emergency Mortgage Assistance Program.  <u>See</u>, **Exhibit 1**, Transcript of January 12, 2009.

Over the course of the next three years, the Plaintiff and Defendants filed various motions to open and extend and/or vacate judgment for the primary reason of review for loss mitigation options.  Additionally, the Defendants engaged the use of counsel as of November 2010, the Law Firm of Cohen and Acampora.

The Defendants subsequently engaged the services of Attorney Christopher Brown on or about July 20, 2012. At this time, Attorney Brown challenged the jurisdiction of the court via an Objection to the Motion for Strict Foreclosure to which a supplemental brief was filed on August 3, 2012. The Plaintiff filed a reply on or about August 17, 2012.

Eventually, the parties had an evidentiary hearing date set for May 7, 2014 at which time the parties entered into a stipulated judgment. Subsequently, the Defendant Elizabeth Conrad filed a Motion to Open the judgment which was denied by the court on September 29, 2014. Attorney Brown was excused as counsel for the Conrad defendants at that time.

On the eve of the sale, the Defendant John Conrad filed for bankruptcy protection. Thereafter, the Defendants retained Cali and Pol as counsel. Now, the Defendants via their fourth attorneys have filed a Motion to Dismiss based on an alleged violation of the provisions of the Emergency Mortgage Assistance Program claiming the same attacks the subject matter of this court.

This objection follows.

**B.    LAW AND ARGUMENT**

**1.    Standard of Review**

Pursuant to Connecticut Practice Book § 10-30, *et seq.*, a defendant may only submit a Motion to Dismiss to contest the court's jurisdiction over a particular matter. More particularly,

"[t]he motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." Conn. Prac. Bk. §13-31(a).

"The standard of review on a motion to dismiss is equally well established.  In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." *Villager Pond, Inc. v. Town of Darien*, 54 Conn.App. 178, 183, 734 A.2d 1031 (1999), *quoting*, *Mahoney v. Lensink*, 213 Conn. 548, 567, 569 A.2d 518 (1990). Furthermore, it is the law in our courts…that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Villager Pond, Inc. v. Town of Darien*, 54 Conn.App. 178, 183, 734 A.2d 1031 (1999), *quoting*, *Pamela B. v. Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998).

### 2.    This Court Already Found Compliance with P.A. 08-176.

Under the guise of a collateral attack on this court's subject matter jurisdiction, the Defendants have filed a Motion to Dismiss based on an alleged lack of Notification of the

Emergency Mortgage Assistance Program.   The Defendants claim that the Plaintiff did not comply with Notification requirements prior to the commencement of the action by attacking the affidavit dated November 19, 2008 and that one of the Defendant's claims he never received the Notice.

As set forth in the Defendants brief, the Plaintiff filed an affidavit of compliance with the provisions of the Emergency Mortgage Assistance Program.  In the brief, the Defendants point out the requirement:

> The foreclosure of the mortgagor's mortgage may … continue… the provided the mortgagee files an affidavit with the court stating the notice provisions of subsection (a) of this section have been complied with and that either the mortgagor failed to meet with the mortgagee or failed to comply with all of the time limitations specified in the notice as provided in subsection (a) of this section or that the mortgagor's application for emergency assistance payments was not approved by the date thirty calendar days after the date of receipt of the mortgagor's application, or that a determination of ineligibility was made.

See, Defendants Brief and Conn. Gen. St. §8-265ee (b)(emphasis directly from Defendants Brief).

The Plaintiff, as acknowledged by the Defendants, submitted an affidavit attesting to the mailing of the notice to the Defendants in compliance with the provisions of the statute.  The Defendants now complain 7 years after the commencement of this action that they did not receive the Notice.  The Defendants set forth that the Plaintiff was required to provide a signed green card or certified mail receipt.  However, the statute does not require such a submission.

Interestingly, the provisions of the statute also call for, in the the alternative, that the letter be sent via registered mail. Yet, there is not a signature required for registered mail. See, *Bank of Am. N.A. v. Nino*, 2014 Conn. Super. LEXIS 1612, *1, *30 (Conn. Super. Ct. July 1, 2014). In this instance, the Plaintiff submitted an affidavit setting forth compliance with the provisions of the Conn. Gen. St. §8-265ee, which included a copy of the correspondence although not required by statute, to which this court (Mintz. J.) found compliance on January 9, 2009. As such, compliance with Conn. Gen. St. §8-265ee is the law of the case.

> The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . [When] a matter has previously been ruled [on] interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Testa v. Geressy*, 286 Conn. 291, 306-307, 943 A.2d 1075 (2008), quoting *Johnson v. Atkinson*, supra, 249. "A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Citation omitted.) *Breen v. Phelps*, 186 Conn. 86, 99-100, 439 A.2d 1066 (1982).

*Total Recycling Servs. of Conn., Inc. v. Conn. Oil Recycling Servs., LLC*, 308 Conn. 312 (Conn. 2013).

Further, the statute provides that an affidavit can be submitted setting forth that the mortgagors applied for and where denied assistance. What the Defendants fail to disclose in

their Motion to Dismiss is that they applied for and were denied assistance with the Emergency

Mortgage Assistance Program during the pendency of this action.  See, Exhibit 2 (Email from

CHFA confirming application for and denial of assistance with EMAP).

Finally, there is no requirement that the Defendants receive the notice the statute

specifically sets forth that the letter be mailed.  In accordance with the often cited presumption

of the "mailbox rule" of the Uniform Commercial Code, as adopted in Connecticut statutes, this

notice is deemed received by the borrower after it is validly placed into the possession of the

United States Postal Service with a valid address and postage affixed.  See, *Echavarria v.*

*National Grange Mutual Insurance Co.*, 275 Conn. 408, 418 (2005).  In this instance, the

Plaintiff has submitted an affidavit attesting to the mailing of the Notice in accordance with the

provisions of Conn. Gen. St. §8-265ee.

      **3.**      **Attacks On Jurisdiction Are Not Without Limitation.**

After 7 years of a pending action, the Defendants are challenging this court's jurisdiction

based on an allegation that the Notice of the availability of the Emergency Mortgage Assistance

Program was not received.  See, Affidavit of John W. Conrad.  As set forth above, the Plaintiff

via counsel, filed an Affidavit of Compliance with EMAP in 2009 and again in 2010.  Despite

this allegation, the Defendants consented to judgment and were canvassed by this court

concerning the entry of judgment.   In an effort to evade the terms of the stipulation, i.e. no

motions to open and no appeals, the Defendants submitted this motion. However, this is nothing more than a collateral attack on this court's subject matter jurisdiction.

In *Urban Redevelopment Comm. v. Katsetos,* 86 Conn. App. 236, 860 A.2d 1233 (2004), *cert denied,* 272 Conn. 919, 866 A.2d 1289, 2005 Conn. LEXIS 35 (2005), the Appellate court pointed out that attacks on jurisdiction are not without limitation:

> It often is stated that "a challenge to subject matter jurisdiction can be raised at any time" and that "once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Honan* v. *Dimyan*, 85 Conn. App. 66, 69, 856 A.2d 463 (2004); see also *ABC, LLC* v. *State Ethics Commission*, 264 Conn. 812, 822-23, 826 A.2d 1077 (2003); *Fish* v. *Igoe*, 83 Conn. App. 398, 402, 849 A.2d 910, cert. denied, 271 Conn. 921, 859 A.2d 577 (2004).

> Our Supreme Court, however, has stated that <u>there are boundaries to challenges</u> concerning the issue of subject matter jurisdiction. "As we have only recently observed . . . [t]*he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal*. James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695-97; Restatement (Second), Judgments 15 (Tent. Draft No. 5 1978). . . . **Under this rationale, at least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so**. James & Hazard, op. cit. 695; Restatement (Second), Judgments, supra." (Citation omitted; emphasis added; internal quotation marks omitted.) *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 103-104, 616 A.2d 793 (1992); see also *Torrington* v. *Zoning Commission*, 261 Conn. 759, 767-69, 806 A.2d 1020 (2002); *Vogel* v. *Vogel*, 178 Conn. 358, 362-63, 422 A.2d 271 (1979) (emphasis added).

*Urban,* 86 Conn. App. at 240-41.

The *Urban* court was presented with a Motion to Open and a Motion to Dismiss approximately 3 years after the parties entered into a stipulated judgment concerning condemnation of property.  The Defendant filed the Motion to Open and Motion to Dismiss on the basis that the court did not have jurisdiction to enter the judgment due to a lack of subject matter jurisdiction.  This claim was based on failure to follow statutory requirements for condemnation as set forth in a Connecticut Supreme Court case.  In response, the lower court denied the Motions by stating the motions were filed more than four months after judgment entered pursuant to Conn. Gen. St. §52-212a.  The Appellate court then up held the decision by stating the court needed to uphold the finally of judgments.

Therein the *Urban* court set forth:

We then stated that "litigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority, and the desirability of the finality of judgments."

*Urban, supra,* 86 Conn. App. at  242,<u>citing</u>, *Daly* v. *Daly*, 19 Conn. App. 65, 561 A.2d 951 (1989).

In this instance, the defendants were represented by counsel, Christopher Brown. During the course of his representation, Attorney Brown filed multiple motions and objections inclusive of challenges to standing which eventually lead to an evidentiary hearing date of May 7, 2014.  At which time, the parties reached an agreement to which judgment entered.  <u>See</u>, Exhibit 3 (Transcript of May 7, 2014 hearing).

The parties were canvassed by this court and judgment of foreclosure by sale entered.  In effort to evade the judgment, the Defendant Elizabeth Conrad filed a motion to open which was denied by the court.  Thereafter, the sale date was only suspended by the filing of the bankruptcy of one of the defendants, Joseph Conrad.

Now the defendants are challenging jurisdiction based on a claim concerning the Emergency Mortgage Assistance Program notification.  Interestingly, an EMAP affidavit was filed with the court in 2009 and again in 2010.  Now after judgment entered on at least two separate occasions, January 12, 2009 and May 7, 2014, the defendants are seeking further delay in this matter.  Since the court must entertain the finality of judgments: the defendants had the opportunity to litigate any issues concerning this matter over the course of 6 years prior to the entry of judgment and failed to raise this issue until a year after judgment entered, this court should not allow this collateral attack on jurisdiction. <u>See</u>, *Urban, supra,* 86 Conn. App. at  242, 860 A.2d 1233, <u>see also</u>, *Salem Five Mortg. Co., LLC v. Afsary*, 2014 Conn. Super. LEXIS 1596

(Conn. Super. Ct. June 26, 2014).


      **4.**      **An Alleged Lack Of Compliance With EMAP Does Not Implicate Subject Matter Jurisdiction**.

It is respectfully submitted that the Superior Court case law which has held that failure to strictly comply with the statutory EMAP notice provisions under Conn. Gen. St.§ 8-265ee implicates subject matter jurisdiction are incorrect for a few reasons. First, the cases which address strict compliance with statutory notice provisions all share a common hallmark- they create the very remedy being exercised. A mortgage foreclosure, however, is not a creature of statute but rather of the common law. A party has the common law right to prosecute a mortgage foreclosure, which right is not created by statute. Second, the legislative history provides no support that the statute was intended to be used as a punitive measure to strip the court of subject matter jurisdiction if the notice was not sent. In fact, the legislative history shows that no private right of action[1] exists if the statute is violated. Third, the legislature is

---

1 Of interest is in the proposed Bill 5577, section 19 provided for a private right of action for violations of Sections 9-14. The proposal did not include a private right of action for violations of Section 5. The drafters, if they intended a private right of action or a remedy for violations of Section 5 could have included it in the draft. The private right of action section in the proposed Bill 5577, was written as follows:

> Sec. 19. (NEW) (Effective July 1, 2008) (a) Unless otherwise specified in this act, any violation of sections 9 to 14, inclusive, of this act shall be deemed an unfair or deceptive trade practice. The Banking Commissioner, the Attorney General, or any

required-when it intends to abrogate common law rights- to expressly state[2] that a statute is

doing precisely that, and no such express provisions exist.

---

party to a mortgage may bring suit in a court of competent jurisdiction to enforce the
provisions of this act under chapter 735a of the general statutes.

(b) An injured party to a mortgage shall have a private right of action, and may bring a
claim in a court of competent jurisdiction within six years of the closing for the
following: (1) Actual, consequential and incidental damages; (2) statutory damages of
five thousand dollars for each violation; and (3) costs and reasonable attorney's fees.

(c) In addition, the court shall grant an injured borrower such relief as it deems just and
equitable, including, but not limited to: (1) Issuing an injunction rescinding a mortgage;
(2) issuing an injunction barring foreclosure; (3) issuing an injunction reforming the
terms of the mortgage loan to conform to the provisions of this act; and (4) issuing an
injunction ordering the creditor to refrain from engaging in any prohibited conduct.

(d) A borrower or mortgagor may assert fraud and any violation of sections 9 to 14,
inclusive, of this act as a counterclaim or defense to foreclosure without time
limitation.

(e) A borrower or mortgagor acting only in an individual capacity may assert claims
based on violations of the provisions of sections 9 to 14, inclusive, of this act which the
borrower could assert against the original lender of a mortgage against any subsequent
holder or assignee of the loan in an original action within two years after the closing of
the loan. Such claims shall be limited to amounts required to reduce or extinguish the
borrower's liability under the loan plus amounts required to recover costs, including
reasonable attorney's fees.

This private right of action section was revised and ultimately became Section 30 of Public Act 08-
176. In the final version, no right of action was provided for a Lender's failure to follow the EMAP
notice provisions.

2 Statutes change common law rights "only if the language of the legislature plainly and unambiguously
reflects such an intent". *Vitanza v. Upjohn Co.,* 257 Conn. 365, 381 (2001). The legislature must state if
it intends to abrogate common law rights. *Daimler Chrysler Services North America, LLC v.
Commissioner of Revenue Services,* 274 Conn. 196, 216 (2005).

    a.    <u>A foreclosure is a common law cause of action, and therefore substantial compliance with the EMAP statute is permissible</u>.

A foreclosure is a common law cause of action, and substantial compliance with a statutory notice provision is permissible. The case law interpreting statutory notice provisions and the requirement of "strict compliance" typically involve cases in which the statute itself creates the remedy for the plaintiff, because there was no such right under the common law. "The statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with". *Wickes Mfg. Co. v. Currier Electric Co.,* 25 Conn. App. 751, 757 (1991); *Rana v. Ritacco*, 236 Conn. 330, 336 n.4 (1996). Notably, even this line of cases adopts a "substantial compliance" test when dealing with the contents of a statutory notice which perfects a statutory cause of action. *Okee Industries, Inc. v. National Grange Mutual Insurance Company*, 225 Conn. 367 (1993) (subcontractor's notice under Conn. Gen. St. § 49-42(a) deemed substantially compliant). A mortgage foreclosure, however, is a common law[3] remedy, and not a remedy created by statute, and therefore, strict

---

  3 "At common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt. n13 In *Derby Bank v. Landon*, 3 Conn. 62, 63 (1819), this court held that 'a foreclosure and consequent possession . . . is in the nature of satisfaction of a debt secured by mortgage. It is deemed an appropriation of the thing pledged, in payment of the demand, for which it was security.'" *Fairfield Plumbing & Heating Supply Corp. v. Kosa,* supra, 220 Conn. 647. Thus, even if the value of the property that the mortgagee gained was less than the debt owed to her, the entry of judgment precluded any further common-law proceedings on the note. Id. Consequently, in 1833, the legislature created the remedy of the deficiency judgment n14 in

compliance with the statutory notice provisions does not apply. It is respectfully submitted that case law applying strict compliance with the notice to quit statute is inapplicable, because that relates to a statutory cause of action, as does the defective highway statute, both of which were relied upon by the Court in *People's Bank v. Wright,* 2015 Conn. Super Lexis 694.

             b.    <u>Substantial compliance comports with the statutory notice provisions for mediation and underemployed persons.</u>

Conn. Gen. St. § 1-2z requires the court, as part of a statutory analysis, to consider the text of the statute itself and its relationship to other statutes. The EMAP notice requirements under Conn. Gen. St. § 8-265ee are nearly identical to the statutory notice provisions for "protection from foreclosure" under Conn. Gen. St. § 49-31e and mediation under Conn. Gen. St. § 49-31, neither of which have been interpreted to deprive involve subject matter jurisdiction. Rather, those statutory foreclosures notices have been interpreted to require compliance prior to the entry of a foreclosure judgment, notwithstanding use of the term "shall"[4]

---

    order to make the plaintiff whole when the value of the security did not cover the amount of the debt owed to the plaintiff. Id.; see also D. Caron, Connecticut Foreclosures (3d Ed. 1997) § 9.05A, p. 247.

    *Linden Condo. Ass'n v. McKenna*, 247 Conn. 575 (1999)

4 The Connecticut Supreme Court has held that the term "shall" in a statute can be directory rather than mandatory, including use of that term in the context of CGS 49-42(a) regarding whether a surety on a public construction project, which fails either to pay or deny a notice of claim within 90 days, as required by the statute, waives any substantive defenses and becomes automatically liable for the full amount of

in regard to the notice being provided at the time of the commencement of the action.  Both

Conn. Gen. St. §  49-31e (protection from foreclosure) and Conn. Gen. St. §  49-31l (mediation)

contain language which states that the lender "shall give notice" at the time the action is

commenced".  Neither of those statutes- despite the use of the word "shall" send the notice at

the time of commencement- require that a foreclosure action be dismissed for lack of

compliance. Rather, both statutes clearly allow the exercise of jurisdiction by the court until

such notice is provided.  Specifically, if notice is not sent of the availability of protection from

foreclosure, under Conn. Gen. St. §  49-31e (d), the court may issue an order staying the

foreclosure for 15 days during which the homeowner may apply for protection from foreclosure.

A lender's failure to comply with the notice requirement for the foreclosure mediation program

under Conn. Gen. St. §  49-31l similarly does not render an absence of subject matter

jurisdiction, rather, it contains a similar provision allowing inclusion within the mediation

program under Conn. Gen. St. §  § 49-31l(b)(5) and (6):

---

the claim. In answering this question, **the Court held that "because the statute does not provide any express penalty for a surety's failure to comply with the 90 day deadline, the purpose of the ninety day response period was to create order and facilitate the claim process by providing a brief opportunity for a surety to evaluate and potentially resolve a claim prior to the initiation of litigation, and nothing in the legislative history of the statute suggests that the legislature viewed the ninety day response period as an essential, substantive component, or that intended to impose thereby a judicial default provision;** and where the surety expressly denies a claim or does not respond substantively to a claim within the ninety day period, the claimant, in either situation, is free to proceed with litigation in order to enforce its rights…" *Electrical Contractors, Inc. v. Insurance Company of the State of Pennsylvania,* 314 Conn. 749 (2014).

(5) If at any time on or after July 1, 2008, but prior to July 1, 2016, **the court determines that the notice requirement of subdivision (1) of this subsection has not been met, the court may, upon its own motion or upon the written motion of the mortgagor, issue an order that no judgment may enter for fifteen days during which period the mortgagor may submit a foreclosure mediation request form to the court.**

**(6) Notwithstanding any provision of the general statutes or any rule of law to the contrary, prior to July 1, 2016, no judgment of strict foreclosure nor any judgment ordering a foreclosure sale shall be entered in any action** subject to the provisions of this subsection and instituted by the mortgagee to foreclose a mortgage on residential real property unless: (A) Notice to the mortgagor has been given by the mortgagee in accordance with subdivision (1) of this subsection and the time for submitting a foreclosure mediation request form has expired and no foreclosure mediation request form has been submitted, or if such notice has not been given, the time for submitting a foreclosure mediation request form pursuant to subdivision (2) or (3) of this subsection has expired and no foreclosure mediation request form has been submitted, or (B) the mediation period set forth in subsection (b) of section 49-31n has expired or has otherwise terminated, whichever is earlier.

Conn. Gen. Stat. § 49-31*l*.

Failure to comply with the notice provisions under the mediation or protection from foreclosure statutes does not impair the common law right of foreclosure. The same result obtains under Conn. Gen. St. § 8-265ee, because a related provision - Conn. Gen. St. § 8-265dd -requires the same conclusion[5].

---

5 CGS 1-2z requires the court, as part of its statutory analysis, to consider the text of the statute itself and its relationship to other statutes, which includes § 8-265dd(b), part of the same set of EMAP provisions.

      c.    <u>Strict compliance with Conn. Gen. St. § 8-285ee renders Conn. Gen. St. §
8-265dd meaningless and of no effect</u>.

Principals of statutory interpretation require that two statutory EMAP provisions be

reconciled, particularly where they exist in the same body of law regarding emergency mortgage

assistance. Those two provisions are 8-265ee and 8-265dd.

> [W]e must, if possible, construe two statutes in a manner that gives effect to both,
> eschewing an interpretation that would render either ineffective. In construing two
> seemingly conflicting statutes, we are guided by the principle that the legislature is
> always presumed to have *created a harmonious and consistent body of law . . . . State v.
> Ledbetter*, [supra, 240 Conn. 336]. . . . Accordingly, [i]f two statutes appear to be in
> conflict but can be construed as consistent with each other, then the court should give
> effect to both. . . . *Wilson v. Cohen*, 222 Conn. 591, 598, 610 A.2d 1177 (1992); <u>see</u>
> *Hirschfeld v. Commission on Claims*, 172 Conn. 603, 607, 376 A.2d 71 (1977). If a court
> can by any fair interpretation find a reasonable field of operation for two allegedly
> inconsistent statutes, without destroying or preventing their evident meaning and intent,
> it is the duty of the court to do so. *Knights of Columbus Council [No. 3884] v. Mulcahy*,
> 154 Conn. 583, 590, 227 A.2d 413 (1967); *Shanley v. Jankura*, 144 Conn. 694, 702, 137
> A.2d 536 (1957). *Windham First Taxing District v. Windham*, 208 Conn. 543, 553, 546
> A.2d 226 (1988). Therefore, [w]e must, if possible, read the two statutes together and
> construe each to leave room for the meaningful operation of the other. *State v. West*, 192
> Conn. 488, 494, 472 A.2d 775 (1984). In addition, [i]f two constructions of a statute are
> possible, we will adopt the one that makes the statute effective and workable . . . . *State
> v. Scott*, 256 Conn. 517, 538, 779 A.2d 702 (2001). . . . *Nizzardo v. State Traffic
> Commission*, 259 Conn. 131, 156-57, 788 A.2d 1158 (2002)." (Internal quotation marks
> omitted.) *Rainforest Café, Inc., v. Dept. of Revenue Services*, 293 Conn. 363, 377-78,
> 977 A.2d 650 (2009).
>
> *Dorry v. Garden*, 313 Conn. 516, 531-532 (2014).

The court's duty is to reconcile Conn. Gen. St. § 8-265ee and Conn. Gen. St. § 8-265dd,

and doing so is fairly straightforward after reviewing their provisions. § 8-265dd(b) states:

"**notwithstanding any provision of the general statutes, or any rule of law to the contrary"**, on and after July 1, 2008, no judgment of strict foreclosure nor any judgment ordering a foreclosure by sale shall be entered in any action instituted by the mortgagee to foreclose the mortgage unless (1) notice to the mortgagor has been given by the mortgagee in accordance with section 8-265ee and the time for response has expired, and (2) a determination has been made on the mortgagor's application for emergency mortgage assistance payments in accordance with section 8-265ff or the applicable time periods set forth in sections 8-265cc to 8-265kk, have expired, whichever is earlier."

The court is obligated to give effect to § 8-265dd(b) in its analysis, and that provision is rendered meaningless if 8-265ee requires strict compliance, with the penalty of a loss of subject matter jurisdiction.  Had the legislature intended such a result, it would have repealed or at least amended § 8-265dd(b), expressly abrogating common law rights. It did not do so. Applying the case law interpreting Conn. Gen. St. §  8-265ee to its logical conclusion that strict compliance with an EMAP notice is required, under no circumstances would any residential mortgage foreclosure be viable if the notice was not sent prior to commencing the action, stripping the trial court of subject matter jurisdiction. Such a contention ignores the interplay of  § 8-265ee and § 8-265dd(b), and the time honored maxim that the legislature must expressly state that it is abrogating common law rights if it is doing so. The phrase   "**notwithstanding any provision of the general statutes, or any rule of law to the contrary"** under Conn. Gen. St. §  8-265dd(b)

would be rendered meaningless[6] if Conn. Gen. St. § 8-265ee was interpreted to require strict compliance and to deprive the court of subject matter jurisdiction. The legislature, when it enacted Conn. Gen. St. § 8-265ee, was free to repeal some or all of § 8-265dd(b), but it did not do so The legislature intended, by not expressly repealing § 8-265dd(b), to have that provision remain and be given continuing effect, notwithstanding the enactment of Conn. Gen. St. § 8-265ee.

        d.   <u>EMAP allows a foreclosure to be pending while a borrower is receiving assistance</u>.

As set forth above, the Defendants in this matter applied for and were denied assistance under the EMAP program. <u>See</u>, Exhibit 3. During the period of application, the Plaintiff did not move forward this with action.

---

6 "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first **to consider the text of the statute itself and its relationship to other statutes.** If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Chairperson, *Connecticut Medical Examining Board v. Freedom of Information Commission*, supra, 310 Conn. 283.

*Comm'r of Pub. Safety v. Freedom of Info. Comm'n,* 312 Conn. 513 (2014).

The provisions within the EMAP statutory framework support the argument that withholding judgment is the method of allowing an eligible borrower to participate in the EMAP program. It is logical to reason that no class of borrowers, such as those who do not qualify for EMAP, would have greater rights than those who do qualify for the program. A summary of the EMAP provisions below supports this contention.

● 8-265ff(e) The authority shall make a determination of eligibility for emergency mortgage payments by the date thirty calendar days after the receipt of the mortgagor's application. **During said thirty-day period no judgment of strict foreclosure or any judgment ordering foreclosure by sale shall be entered in any action for the foreclosure of any mortgage any mortgagee holds on the mortgagor's real property.**

● 8-265gg (d) "Payments shall be discontinued when the authority determines that, due to changes in the mortgagor's financial condition, the payments are no longer necessary **….and a foreclosure of the mortgagor's mortgage may, at any time thereafter, proceed** without further restriction or requirement under sections 8-265cc to 8-265hh, inclusive."

● 8-265gg (f) when the authority fails to pay a lender within 30 days of a scheduled due date or if the mortgagor fails to observe and perform all of the terms, covenants and conditions of the mortgage, the mortgagee shall provide a fifteen day notice to the authority **and the foreclosure of the mortgagor's mortgage may, at any time thereafter, proceed without any further restriction or requirement** under sections 8-265cc to 8-265kk, inclusive.

● 8-265ee (b) provides that "**the foreclosure of the mortgage may…continue without any further restriction or requirement…**provided the mortgagee files an affidavit with the court stating the notice provisions of subsection (a) of this section have been complied with and that either the mortgagor failed to meet with the mortgagee or failed to comply with all of the time limitations specified in the notice as provided in subsection (a) of this section or that the mortgagor's application for emergency

assistance payments was not approved….or that a determination of ineligibility was made."

None of these statutory provisions suggest that a foreclosure cannot be pending when a qualified EMAP borrower begins receiving assistance. Rather, the statutory framework clearly envisions that a borrower, while a foreclosure is pending, may apply for and receive (if qualified) EMAP assistance. None of these provisions suggest that a failure to issue an EMAP notice deprives the Court of its ability to adjudicate the common law remedy of foreclosure.

Accordingly, a lender that issues an EMAP notice to a borrower after filing a foreclosure substantially complies with the EMAP provisions, provided that no judgment of foreclosure has entered until compliance occurs. Once a borrower applies for the EMAP program and is approved, the foreclosure is essentially stayed until there is payment or the steps outlined above have occurred and the foreclosure proceeds. These provisions make it clear that the statute was designed to protect the class of EMAP eligible borrowers, all of which are subject to being sued in a foreclosure-and to apply for the program but not have a judgment enter-until notice has been provided as set forth under § 8-265dd(b). This reading is consistent with the plain language of § 8-265dd(b), and is easily reconciled when reviewing statutory notice provisions for the mediation and protection from foreclosure programs are compared to Conn. Gen. St. § 8-265ee.

     e.   <u>The legislature did not expressly abrogate common law rights</u>.

The remedy of foreclosure is rooted in the common law, and the legislature is required-when it intends to abrogate common law rights- to expressly do so. Statutes change common law rights "only if the language of the legislature plainly and unambiguously reflects such an intent". *Vitanza v. Upjohn Co.,* 257 Conn. 365, 381 (2001). The legislature must state if it intends to abrogate common law rights. *Daimler Chrysler Services North America, LLC v. Commissioner of Revenue Services,* 274 Conn. 196, 216 (2005). There are no provisions of EMAP which support that the legislature unambiguously intended to abrogate common law rights. It is respectfully submitted that the arguments advanced herein were not addressed in *People's United Bank v. Wright*, 2015 Conn. Super Lexis 694 (2015). The Court in that case relied upon New York law in reaching its conclusion regarding the New York Home Equity Theft Protection Act as well as statutorily created causes of action not common law actions.


**C.**    **CONCLUSION**

Based on the forgoing: this court has already finding compliance with the notice requirements of the Emergency Mortgage Assistance Program; the defendants preclusion from continuing to litigate issues of standing when they had an able opportunity to do so prior to the

entry of a stipulated judgment; and since provisions of EMAP do not implicate subject matter

jurisdiction, the Plaintiff's Objection to the Motion to Dismiss should be sustained.

Plaintiff

By___418756_____
    Christopher J. Picard
    Hunt Leibert Jacobson, P.C.
    Its Attorneys
    50 Weston Street
    Hartford, Ct. 06120
    (860) 808-0606
    Juris No. 101589

**<u>ORDER</u>**

The forgoing Objection having been duly heard is hereby:

SUSTAINED/OVERRULED

_____

JUDGE/Clerk/Asst. Clerk

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, by first

class mail on January 20, 2015 to the following:

Mark Sank & Associates LLC (421741)
666 Glenbrook Road
Stamford, CT 06906

U. S. Attorney
District of Connecticut
157 Church Street , 23 Floor
New Haven , CT 06510

David J. Marantz, Committee
60 Long Ridge Road, Suite 200
Stamford,  CT 06902

                                            ____418756_____
                                            Christopher J. Picard
                                            Attorney for the Plaintiff

PURSUANT TO FEDERAL LAW, THIS LAW FIRM IS A DEBT COLLECTOR.  WE ARE
ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.  HOWEVER, IF YOU ARE IN BANKRUPTCY OR
RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS COMMUNICATION IS
NOT AN ATTEMPT TO COLLECT THE DEBT AGAINST YOU PERSONALLY, BUT IS
NOTICE OF A POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL
PROPERTY.

# EXHIBIT 1

```
FST CV 08 5008432 S              :   SUPERIOR COURT

US BANK NATIONAL AS TRUSTEE      :   JUDICIAL DISTRICT

VS.                              :   STAMFORD/NORWALK

ELIZABETH CONRAD, ET AL          :   JANUARY 12, 2009
```



BEFORE THE HONORABLE DOUGLAS MINTZ, JUDGE


A P P E A R A N C E S :


   Representing the Plaintiff:

      ATTORNEY CHRISTOPHER J. PICARD
      Hunt Leibert
      50 Weston Street
      Hartford, Connecticut 06416


                              Recorded By:
                              Vanessa Fjelldal

                              Transcribed by:
                              Carrie Parker
                              Court Recording Monitor
                              123 Hoyt Street
                              Stamford, Connecticut 06905

1        THE COURT:  57.  US Bank National versus Conrad.

2        ATTY. PICARD:  Ready, Your Honor.

3        (Other matters were heard.)

4        THE COURT:  Okay, Attorney Picard, is your next

5   one number 57?

6        ATTY. PICARD:  Yes, Your Honor, it is.

7        THE COURT:  US Bank National versus Conrad.  How

8   did you let the self-represented person know that you

9   were going forward today?  Elizabeth Conrad and John

10   Conrad.

11        ATTY. PICARD:  By way of letter dated January 7.

12   Notified the IRS by way of telephone call on the same

13   day.

14        THE COURT:  Say that again.  I'm sorry.

15        ATTY. PICARD:  Notified the IRS by telephone

16   call.

17        THE COURT:  What about the Conrads?

18        ATTY. PICARD:  By way of letter.

19        THE COURT:  When did you send that?

20        ATTY. PICARD:  January 7th.

21        THE COURT:  Okay.  The Court will note that a

22   default for failure to plead was granted on January

23   8th against Elizabeth T. and John W. Conrad.

24        The Court'll grant the motion for default for

25   failure to -- well, let me -- failure to disclose a

26   defense -- number 109 against the United States of

27   America IRS.

1        I'm looking for the final mediator's report.

2        Oh, it says mediation time period expired.

3        Okay, you may approach.

4        ATTY. PICARD:  I believe they didn't show up to

5    the second session.

6        THE COURT:  Okay.

7        The Court'll find compliance with Public Act 08

8    176.  The Court'll the original lender was Mortgage

9    Lenders Network USA, Inc. with an initial interest

10   rate 8.76 percent, which could have changed in August

11   of last year.

12       The Court will note the Mortgage Lenders, Inc.,

13   endorsed the note to E-Max Financial Group, LLC by an

14   (4:00:54 inaudible) to the note.  E-Max Financial

15   Group, LLC endorsed the note to Residential Funding

16   Company, LLC.  Residential Funding Company, LLC

17   endorsed the note to US Bank National Association as

18   Trustee, which is the plaintiff here.

19       The Court'll find the papers are in order.  The

20   Court will hand back the original note, mortgage

21   deed, copy of the assignment and transmittal letter

22   of the assignment to the plaintiff.

23       The plaintiff here is US Bank National --

24       ATTY. PICARD:  Yes.

25       THE COURT: -- Association as Trustee.  I've got

26   an affidavit of debt that says, Authorized as

27   assistant secretary on behalf of America Servicing

3

1    Company from Norwest Home Improvement.  Then it says

2    Wells Fargo Bank NA Attorney in fact, Sean Nicks

3    (Phonetic) assistant secretary.

4        ATTY. PICARD:  ASC is a division of Wells Fargo,

5    and they're the card servicer of the note.

6        THE COURT:  Okay.  Thank you.

7        All right.  The Court'll find the debt to

8    $498,114.73.  Oh, IRS is involved in this.

9        ATTY. PICARD:  Yes, Your Honor.

10        THE COURT:  The Court'll find the fair market

11    value of the property to be $540,000, award a

12    reasonable appraiser's fee of $335, title search fee

13    of $225, attorney's fees of $2,100.

14        The Court will enter a judgment of foreclosure

15    by sale with a sale date of March 28, 2009.

16    Subsequent -- strike that.

17        Okay.  Did I hit everything?

18        ATTY. PICARD:  Yes, Your Honor.

19        THE COURT:  Okay.

20            *                    *                    *

21

```
FST CV 08 5008432 S              :   SUPERIOR COURT

US BANK NATIONAL AS TRUSTEE      :   JUDICIAL DISTRICT

VS.                              :   STAMFORD/NORWALK

ELIZABETH CONRAD, ET AL          :   JANUARY 12, 2009
```

C E R T I F I C A T I O N

     I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of Stamford, Connecticut, before the Honorable Douglas Mintz on the 12th day of January 2009.

     Dated this 8th day of August, 2012 in Stamford, Connecticut.

Carrie Parker
Court Recording Monitor