Exhibit 46

# Exhibit 46

RECEIVED
OCT 28 2019
By

```
NO:   FST-CV08-5008432-S        :  SUPERIOR COURT

US BANK NATIONAL                :  JUDICIAL DISTRICT
                                   STAMFORD/NORWALK
v.                              :  AT STAMFORD, CONNECTICUT

CONRAD, ELIZABETH ET AL         :  MAY 15, 2017
```

BEFORE THE HONORABLE DOUGLAS MINTZ, JUDGE

A P P E A R A N C E S :

    Representing the Plaintiff:

        ATTORNEY CHRISTOPHER PICARD
        McCalla Raymer Leibert Pierce, LLC
        50 Weston Street
        Hartford, Connecticut 06120

    Representing the Defendant(s):

        MS. ELIZABETH CONRAD, Self-Represented
        58 Weed Hill Avenue
        Stamford, Connecticut 06907

        ATTORNEY MARK SANK
        Mark Sank & Associates, LLC
        666 Glenbrook Road
        Stamford, Connecticut 06906

        Recorded By:
        Rebecca Schalk

        Transcribed By:
        Rebecca Schalk
        Court Recording Monitor
        123 Hoyt Street
        Stamford, CT 06905

1          (Matter called)

2          THE COURT:  Twenty-seven, US Bank versus Conrad.

3          ATTY. PICARD:  Ready, and on the write-on list

4      is the motion to dismiss.

5          THE COURT:  Okay.

6          ATTY. SANK:  Mark Sank for the defendant John

7      Conrad.  I know we had a motion last week, too, that

8      was marked off.  I'm not sure which motion for what.

9          ATTY. PICARD:  Well, that's why we had the

10     motion to dismiss written on with the motion to reset

11     sale.

12         THE COURT:  Okay.

13         (Matter passed; matter recalled)

14         THE COURT:  Twenty-seven, US Bank versus Conrad.

15         (Unrelated matter)

16         THE COURT:  Thank you.  All right.  Could

17     everybody identify themselves for the record, please.

18         ATTY. PICARD:  Christopher Picard for the

19     plaintiff.

20         MS. CONRAD:  Elizabeth Conrad, defendant.  Good

21     morning.

22         ATTY. SANK:  Mark Sank for the defendant John

23     Conrad.

24         THE COURT:  Good morning.  Ms. Conrad, do you

25     understand you have the ability to hire your own

26     attorney if you wanted to?

27         MS. CONRAD:  Yeah.  Yes.

1    THE COURT:  If you needed time to do that the

2    Court might grant you time to do that, do you

3    understand that?

4    MS. CONRAD:  Yes, I do.

5    THE COURT:  And you wish to go forward on these

6    motions today without an attorney?

7    MS. CONRAD:  Yes.

8    THE COURT:  Okay.  So what's on the calendar

9    today is Ms. Conrad's motion to dismiss and a motion

10    to reset law days.  Okay.  We started -- did we start

11    this last week?

12    ATTY. PICARD:  We did, Your Honor.

13    THE COURT:  And then we continued it.

14    MS. CONRAD:  Did we --

15    ATTY. SANK:  I -- we had a different motion on

16    the calendar last week and Your Honor noted that Ms.

17    Conrad had the motion to dismiss.

18    THE COURT:  Oh, right.  Right.  Right.  Okay.

19    Okay.  Ms. Conrad, you may proceed.

20    MS. CONRAD:  First of all, Attorney Picard, did

21    you --

22    ATTY. SANK:  You've got to talk into the

23    microphone.

24    MS. CONRAD:  Okay.  Did you bring the original

25    documents today, Attorney Picard?

26    THE COURT:  You have to --

27    MS. CONRAD:  No.  I guess that's a no, right?

1      THE COURT:  Well, I don't know if it is.

2      ATTY. SANK:  He's not going to answer you.  You

3  have to talk to the judge.

4      THE COURT:  He's not going to answer your

5  question --

6      MS. CONRAD:  Oh.  Oh, okay.

7      THE COURT:  You have to talk through me.

8      MS. CONRAD:  All right.

9      THE COURT:  So do you want me to ask Attorney

10  Picard that?

11      MS. CONRAD:  Yeah.  Yeah.  Did you bring --

12      THE COURT:  Attorney Picard, did you --

13      MS. CONRAD:  Sorry.

14      THE COURT:  -- bring the original documents?

15      ATTY. PICARD:  Yes.

16      THE COURT:  Okay.

17      MS. CONRAD:  Okay.  I -- I would like to look at

18  them today.

19      THE COURT:  Okay.

20      MS. CONRAD:  All right.

21      ATTY. PICARD:  Can we have a marshal present?

22      MS. CONRAD:  Pardon me?

23      THE COURT:  Well, do you want me to pass this so

24  she can look at them, then?

25      ATTY. PICARD:  No.  Well, Attorney Sank is

26  sitting on the side of her.  I trust Attorney Sank.

27      ATTY. SANK:  Thank you.

```
 1                 (Pause)
 2          ATTY. SANK:  Returning this to Attorney Picard.
 3          THE COURT:  Okay.  Ms. Conrad, you may proceed.
 4          MS. CONRAD:  Okay.  The -- my motion to dismiss
 5     was based on the endorsement that was presented to me
 6     and that was illegible.  There was no -- I didn't see
 7     where the -- that endorsement which was presented to
 8     me was not on the original document.  So, that was --
 9     that's the -- that was the thing that was the
10     fraudulent part of it.  So, it was legible.  And I
11     was told there was something wrong with it, but
12     because it was illegible there was nothing we could
13     do about it.
14          So, basically, I'd like to do something about
15     it, which means I would like to hire a -- an expert
16     witness to -- to go through the note so that the --
17     you know, the appropriateness.  I mean -- I mean,
18     obviously, this, you know, it's -- it's on -- you
19     know, to have it all done by an expert.  I mean, I
20     could say what I, you know, I see here.
21          And there is an assignment that's, you know, the
22     assignment's signed by Valerie Finney.  Right.  Where
23     is that?  But -- who was a -- an attorney at Hunt
24     Leibert; at the time she was acting as a vice
25     president of MERS.  So it -- that would be like a
26     conflict of interest, that sort of thing.  You know,
27     and the -- the originality, you know, I would want
```

```
 1    somebody to just to do that.
 2         I mean, that's a rudimentary basic thing.  Those
 3    things should be done before you bring a foreclosure
 4    action and there was -- so, that's -- that's what I
 5    want to do.  So I need a -- you know, so I want to --
 6    I need permission to do that; I assume I need
 7    permission to do that.
 8         THE COURT:  Okay.
 9         MS. CONRAD:  Or what do you think?  I know
10    everybody wants this just to be over, but -- and, you
11    know, actually, I want it to be over too.  But I want
12    it to be in a fair -- you know, I want to -- if there
13    are things here that are not appropriate and -- for
14    instance, like having Valerie Finney be the, you
15    know, arbiter that everything's in shape and she
16    signs it off on -- as a MERS vice president knowing
17    that she's working for -- she's an attorney for Hunt
18    Leibert.  That could, you know.
19         THE COURT:  Okay.  Thank you.  Attorney Picard.
20         ATTY. PICARD:  Your Honor, as you're aware,
21    judgment has already entered in this matter.  There
22    was a stipulation that's been filed, and this -- this
23    is the latest in a series of attempts to avoid the
24    stipulated judgment that was entered into by Ms.
25    Conrad when she was represented by counsel in front
26    of you.  It's a subject of several attempts to -- for
27    motions to open.  She has not presented anything
```

1    under the Sousa decision that rises to the level that

2    requires this Court to act any further to undo a

3    final judgment.  We're simply here on a motion to

4    reset after a bankruptcy.

5         THE COURT:  Okay.  Thank you.  Attorney Sank.

6         ATTY. SANK:  Nothing further.

7         THE COURT:  Okay.  You've got the original

8    documents?

9         ATTY. PICARD:  Yes, Your Honor.

10        THE COURT:  I'll review them.  Is there any

11   objection to me reviewing them?

12        ATTY. SANK:  No, sir.

13        THE COURT:  Ms. --

14        MS. CONRAD:  No, I -- I don't object.

15        THE COURT:  Thank you.

16        MS. CONRAD:  But I don't accept, you know, I

17   don't accept you as a -- an expert witness, you know.

18        THE COURT:  Okay.

19        MS. CONRAD:  Somebody…

20        THE COURT:  Thank you.  Okay.  The Court will

21   find the original lender was Mortgage Lenders Network

22   USA, Inc.  Initial interest rate of 8.7%, that could

23   have changed the first day of August 2008 and every

24   six months thereafter.  The note was signed by

25   Elizabeth P. Conrad.  Mortgage Lenders Network USA,

26   Inc. endorsed the note to Emax Financial Group, LLC.

27        MS. CONRAD:  With no powers of attorney.  Okay.

1        THE COURT:  Right.  Well, that one, there was no

2    power of attorney.  Then, Emax Financial Group, LLC,

3    Inc. endorsed the note to Residential Funding

4    Company, LLC.  That was done by a power of attorney.

5        MS. CONRAD:  No, there's -- there -- that's

6    problematic also.

7        THE COURT:  Well, pursuant to the -- what's the

8    UCC section, Attorney Picard?

9        ATTY. PICARD:  I don't remember off the top of

10   my head; 2-203, maybe.  I can't remember, Your Honor.

11       MS. CONRAD:  Can I just --

12       ATTY. PICARD:  And, Your Honor, this was a

13   subject of prior litigation, this -- the Emax

14   endorsement.

15       THE COURT:  Okay.  And then -- well, I'm just

16   going through the allonges.  Emax endorsed it to

17   Residential Funding Company, LLC.  Residential

18   Funding Company, through a power of attorney,

19   endorsed it to -- I believe the plaintiff here.

20   Well, I'm going -- I'm going to pass this case,

21   because I want to know what that section is because

22   if there's a rebuttable presumption in the -- in the

23   statute that says that signatures on endorsements are

24   valid, then, the defendant would have to rebut that

25   presumption.

26       MS. CONRAD:  There -- can I say something?

27       THE COURT:  Sure.

1    MS. CONRAD:  There was another issue about the

2    Residential Funding Company, that it was -- I don't

3    have the -- what's within the case, but it -- it --

4    they were not -- there's a conflict as to when they

5    existed.  It's -- I think it's the same company but

6    with the different names.

7    THE COURT:  But --

8    MS. CONRAD:  At different times.  So they --

9    THE COURT:  Do you have any --

10    MS. CONRAD:  They were --

11    THE COURT:  -- evidence of that?

12    (Phone ringing)

13    MS. CONRAD:  I'm sorry.  So anyway they -- one

14    second.

15    ATTY. PICARD:  Your Honor, I'll just cut it off.

16    I have both powers of attorney with me.

17    MS. CONRAD:  Yeah.

18    THE COURT:  Okay.  So, you can show them to Ms.

19    Conrad and I'll review them.

20    ATTY. PICARD:  And again, Your Honor, this is a

21    subject of prior litigation.  The defendant doesn't

22    get an opportunity to keep attempting to relitigate

23    the same issue over and over again.  The Sousa

24    decision is very clear.

25    (Pause)

26    MS. CONRAD:  This is -- is this the initial

27    powers of attorney?  The -- or is it the second one,

1  assignment?  I'm sorry.  Was it in this?

2      THE COURT:  Attorney Picard.

3      ATTY. PICARD:  I don't know that the question

4  is, Your Honor.

5      THE COURT:  I'm not sure either.  So…

6      ATTY. PICARD:  There's --

7      MS. CONRAD:  When you -- you said --

8      ATTY. PICARD:  You said that there were -- Your

9  Honor, there was an endorsement from E -- by Emax

10  under a power of attorney.

11      THE COURT:  Right, by Residential Funding

12  Corporation acting as power of attorney.

13      ATTY. PICARD:  That's -- that one's there.

14      THE COURT:  Attorney in fact.

15      ATTY. PICARD:  That's the first one.

16      THE COURT:  Then, Residential Funding endorsed

17  the note by Optimum Servicing, LLC as attorney in

18  fact.

19      ATTY. PICARD:  And that one's there also.

20      THE COURT:  Okay.

21      MS. CONRAD:  No.  I just don't understand.  So,

22  this is the -- the second assignment?  There are two

23  assignments, right?

24      THE COURT:  There are two endorsements.

25      MS. CONRAD:  Endorsements.  Okay.  I've never

26  seen this before, but the -- so I --

27      ATTY. SANK:  Do you want to show this to the

1   judge?

2       MS. CONRAD:  Yeah.  I don't know what that is.

3       ATTY. SANK:  Are you okay with him showing --

4       MS. CONRAD:  I've never seen that before.

5       ATTY. SANK:  -- it to the judge?  Are you okay

6   with these being shown to the judge?

7       MS. CONRAD:  Yes, I am.

8       ATTY. SANK:  Counsel, we're all set.

9       THE COURT:  You may approach.  Thank you.

10      (Pause)

11      THE COURT:  Okay.  Attorney Picard, the second

12  document, Ocwen Loan Servicing, LLC, certificate of

13  assistant secretary.

14      ATTY. PICARD:  Yes, Your Honor.

15      THE COURT:  Is not a power of attorney from

16  Residential Funding to Ocwen Loan that I can see.

17      ATTY. PICARD:  I don't know what you're talking

18  about, Your Honor.

19      THE COURT:  The allonge, it's --

20      ATTY. PICARD:  Whereas Residential Funding

21  Company, LLC, entered into -- into a subservicing

22  agreement with Wells Fargo.

23      THE COURT:  Right.  But the --

24      ATTY. PICARD:  And then this is -- is allowing

25  them to execute the documents from the subservicer.

26  That's…

27      THE COURT:  But -- yes, but Ocwen Loan.

1     ATTY. PICARD:  By Ocwen Loan Servicing, LLC --

2     THE COURT:  Okay.

3     ATTY. PICARD:  -- as attorney in fact.

4     Highlighted for you, Your Honor.

5     THE COURT:  Right.  Residential Funding has

6     entered a subserve with Wells Fargo, whereas the

7     company has purchased the assets of Residential

8     Funding effective February 15, 2013 as assumed…

9     ATTY. PICARD:  And the section, Your Honor, is

10    3-203, I --

11    THE COURT:  Well, and it says certain employees

12    of Wells will be appointed authorized signators.

13    ATTY. PICARD:  And do you keep --

14    THE COURT:  Georgiana Sieleni signed this.  I

15    don't see her name as one of the authorized signature

16    -- oh, there.  She is.  She's right there.

17    ATTY. PICARD:  I highlighted the wrong one; I

18    apologize.

19    THE COURT:  No, that's okay.  Okay.  And do you

20    have the mortgage and the assignments of mortgage?

21    ATTY. PICARD:  Yes, but you've reviewed all of

22    these in the past, Your Honor.  The issue that

23    brought -- was brought was based on the note when I

24    read the motion to dismiss, something about being

25    illegible.

26    THE COURT:  That's true.

27    MS. CONRAD:  Yeah.

1    THE COURT:  But Ms. Conrad brought up the

2    Valerie Finney issue, so I'd just like to review

3    those too.  I just want to review them.

4        (Pause)

5        MS. CONRAD:  I want -- I just want to ask a

6    question on that last -- those documents.  I've never

7    seen them before, why would that be?

8        THE COURT:  Attorney Picard, can you answer

9    that?  I don't know.

10       ATTY. PICARD:  I apologize, what?

11       THE COURT:  Ms. Conrad wants -- she's never seen

12   these documents before.

13       ATTY. PICARD:  The Emax issue was brought up by

14   Attorney Brown, Chris Brown.  And then the other

15   endorsement on it has been subsequent to his --

16       THE COURT:  Okay.

17       ATTY. PICARD:  -- involvement in the case.  But

18   that was one of the specific issues raised by

19   Attorney Brown, was concerning the Emax.  That was

20   resolved and we're back here again on someone

21   challenging the note --

22       THE COURT:  Okay.

23       ATTY. PICARD:  -- with nothing other than mere

24   speculation.

25       THE COURT:  Thank you.

26       ATTY. PICARD:  The section, Your Honor, of the

27   UCC -- and, unfortunately, I'm having to look at New

1    York because I wound up --

2         THE COURT:  Well, I don't need -- I don't --

3         ATTY. PICARD:  Oh.

4         THE COURT:  I think you've provided the power of

5    attorneys that satisfy me.

6         ATTY. PICARD:  Thank you, Your Honor.

7         THE COURT:  Any do you object to me reviewing

8    these?

9         ATTY. PICARD:  And if I may approach.

10        ATTY. SANK:  No objection, Your Honor.

11        THE COURT:  Any objection to me reviewing these?

12        MS. CONRAD:  Not me, no.

13        THE COURT:  Thank you.  The Court will note this

14   is a MERS mortgage and it was assigned to the

15   plaintiff here by Valerie Finney.  Okay.  Anything

16   else?

17        MS. CONRAD:  Yes.  I would like to have the

18   document looked at for originality for -- by an

19   expert, to make sure the -- the document is original.

20        THE COURT:  Okay.  Thank you.  Anything else?

21   Okay.

22        MS. CONRAD:  And -- and to look at the -- yes.

23   I mean, that -- that was -- that was -- to have the

24   document looked at for its originality and to make

25   sure the chain of title is correct.

26        THE COURT:  Okay.  Thank you.

27        MS. CONRAD:  You know, all -- all this.  Yeah.

1        THE COURT:  Anything else?

2        MS. CONRAD:  Not for now.

3        THE COURT:  All right.  The Court is going --

4    going to state that the Court has reviewed the

5    documentation.  The Court finds the papers are in

6    order.  The Court finds that the alonges were

7    properly endorsed through powers of attorney that

8    were presented to the Court.  The Court will find

9    that the mortgage was executed and it was assigned

10   properly to the plaintiff.  The Court is going to

11   deny the motion to dismiss.

12       The Court will -- this case has been pending

13   since 2008.  There have been challenges that have

14   occurred since then.  In that seven-year period, if

15   the defendant wanted to hire an expert, you had ample

16   opportunity to do that.  If you hire an expert that

17   you want to have review these documents, you can do

18   that at any time but you haven't done it yet, so --

19       MS. CONRAD:  No.

20       THE COURT:  Today the plaintiff has presented

21   evidence that satisfies me that the papers are in

22   order, but you can file a motion to dismiss for lack

23   of subject matter jurisdiction at any time.  And if

24   you want to hire an expert, you can.  So, I'm going

25   to hand back the --

26       MS. CONRAD:  Okay.

27       THE COURT:  -- the note, the mortgage, the

1    assignments of mortgage, the powers of attorney to

2    plaintiff's counsel.

3         MS. CONRAD:  Okay.

4         THE COURT:  So I am denying the motion to

5    dismiss.

6         MS. CONRAD:  May I say -- can I add one more

7    thing?

8         THE COURT:  Sure.

9         MS. CONRAD:  Is that -- at the time that I do

10   hire, I just want to insure that those documents will

11   be, you know, made readily available to anyone that I

12   want to have look at them.

13        THE COURT:  Well, I'm not -- that you'll have

14   to --

15        MS. CONRAD:  Well, that -- that was done by an

16   order, by your order the last time.

17        THE COURT:  Well, and it was produced again

18   today and it was produced in court.  If you hire

19   some --

20        MS. CONRAD:  It was produced without the --

21        THE COURT:  If you hire an expert --

22        MS. CONRAD:  Yeah.

23        THE COURT:  -- you can file whatever motions you

24   need --

25        MS. CONRAD:  Okay.

26        THE COURT:  -- to have those documents produced.

27     And, if it's appropriate, the Court will order it.

1    If it's not appropriate the Court won't order it.

2    Okay.  So, we -- does everybody agree the bankruptcy

3    was either dismissed or --

4         MS. CONRAD:  No, not dismissed.

5         THE COURT:  -- it was dismissed without

6    prejudice.

7         MS. CONRAD:  No.  I mean, not -- my -- it was

8    not.  My bankruptcy is ongoing.

9         ATTY. PICARD:  There's two of them, Your Honor.

10        THE COURT:  Okay.

11        ATTY. PICARD:  Mr. Conrad's was --

12        MS. CONRAD:  It --

13        THE COURT:  Dismissed without prejudice.

14        ATTY. PICARD:  And it --

15        THE COURT:  But --

16        MS. CONRAD:  Attorney Picard entered someone

17   else's name, some other bankruptcy.  But the -- my

18   bankruptcy is not dismissed.

19        THE COURT:  No.

20        MS. CONRAD:  It's ongoing.

21        THE COURT:  Hold on.  There's a relief from stay

22   that's in here.  Hold on.

23        ATTY. PICARD:  If I was allowed to finish, Your

24   Honor, I would have pointed that out.

25        (Pause)

26        THE COURT:  Okay.  As to Ms. Conrad's

27   bankruptcy, a relief from stay was granted by Judge

1    Manning on December 21, 2016.

2         ATTY. PICARD:  That is accurate.

3         THE COURT:  And --

4         MS. CONRAD:  But --

5         THE COURT:  -- Attorney Sank, your client's

6    bankruptcy case was dismissed without prejudice.

7         ATTY. SANK:  Apparently, Your Honor.  It was not

8    done with my assistance.

9         THE COURT:  Okay.

10        MS. CONRAD:  I'd like to add a couple of…

11        THE COURT:  Sure.

12        MS. CONRAD:  One -- one thing, that I was not

13   was not present to represent myself in December, and

14   my preparation -- I'm -- I -- I had a week to

15   prepare.  When I initially filed that, you know, the

16   -- the -- the dismiss -- motion to dismiss which is

17   being read today, it took two months before -- with

18   -- be -- after I filed for it to come up on the

19   docket.

20        I'm handling two separate courts.  So it -- just

21   -- just to have a expert witness appear in court is

22   un -- you know, is a hardship.  Just for me to appear

23   in both courts is a hardship, but to have an expert

24   witness in both courts is just financially not

25   feasible because it's expensive.  And -- very

26   expensive.

27        So  -- and to have a week to prepare for

1    something that requires up front money to have these

2    people in place, you have to call them and they have

3    like three weeks lead time.  So it's just not -- it's

4    not something that can be -- that you can do at the

5    convenience of the plaintiff.  It was done to the --

6    at the convenience of the plaintiff, not at -- the --

7    anything, any practical -- anything practical for my

8    purposes.

9        THE COURT:  Okay.  If something happened in the

10   bankruptcy court that you didn't agree with, you

11   would need to go back to the bankruptcy court.  I

12   don't have any power over the bankruptcy court.

13       MS. CONRAD:  What -- I -- why did you just say

14   that?  I don't understand.

15       THE COURT:  Because you said you didn't --

16       MS. CONRAD:  I mean, the -- yeah, I was just

17   say --

18       THE COURT:  You didn't appear in December --

19       MS. CONRAD:  Yeah.

20       THE COURT:  That's what --

21       MS. CONRAD:  No, I am -- I am working on that,

22   so to speak.

23       THE COURT:  Okay.  Okay.

24       MS. CONRAD:  But the thing is that --

25       THE COURT:  I -- the only reason I said it was

26   because you mentioned that you didn't appear.  I

27   thought what followed was regarding that.

1    MS. CONRAD:  Okay.  Yeah.  The -- the thing in

2    December, it wasn't as if it was a -- it wasn't as if

3    I was there when we argued and I lost.  It was I -- I

4    wasn't there.  I haven't been feeling well, as you

5    know.  And, also, there's something for next week; I

6    don't know what that is but I -- I have an

7    appointment with my doctor that I have to…

8    THE COURT:  Something next week in bankruptcy

9    court?

10    MS. CONRAD:  No, here.  I don't know what it is

11    but there are two -- you know.  They keep filing

12    things to come back and come back.

13    THE COURT:  Well, these same motions are on

14    again next week, so they won't have to go forward

15    next week because I dealt with them today.

16    MS. CONRAD:  Oh, okay.

17    THE COURT:  Okay.  Okay.  So I'm going to grant

18    the motion.  Any evidence of the property

19    inspections, preservations of $932.50?

20    ATTY. PICARD:  Not with me, Your Honor.

21    THE COURT:  Okay.  I'll deduct those without

22    prejudice.  There's no update here.

23    ATTY. PICARD:  No, Your Honor.

24    THE COURT:  I'm deducting the $932.50.  Any

25    objection to the debt being $878,307.06?  Attorney

26    Sank.

27    ATTY. SANK:  No, Your Honor.

```
1          THE COURT:  Ms. Conrad.
2          MS. CONRAD:  I don't -- I don't…
3          THE COURT:  Okay.
4          MS. CONRAD:  I don't know.
5          THE COURT:  Then I'll make the finding that
6    that's the debt.  Any objection to the fair market
7    value of the property being $396,000?
8          ATTY. SANK:  No, Your Honor.
9          THE COURT:  Ms. Conrad.
10         MS. CONRAD:  Well, it's probably -- I would say
11   that's not acc -- it's probably less than that.
12         THE COURT:  Okay.  Then for today's purposes
13   I'll determine it should be a foreclosure by sale --
14   a strict foreclosure.  If you think it's worth less,
15   I'm -- it's still -- the debt still exceeds the fair
16   market value so it is not significant so --
17         MS. CONRAD:  Did you say strict foreclosure?
18         ATTY. PICARD:  No, this is going to be a sale,
19   Your Honor.  IRS is a party.
20         THE COURT:  Okay.  So then it really is --
21   you're right.  Okay.  Then for today's purposes only
22   I'll make a finding that the fair market value of the
23   property is $396,000.  They're not looking for an
24   appraiser's fee.  Do you have a breakdown of what the
25   costs are and the attorney's fees are for the
26   bankruptcy?
27         ATTY. PICARD:  It's on the affidavit, Your
```

1    Honor.

2        THE COURT:  No, that's -- it isn't; that's the

3    problem.  Oh, the expenses are $75 only?

4        ATTY. PICARD:  That's my understanding.

5        THE COURT:  Do you have a breakdown of the time

6    spent?

7        ATTY. PICARD:  No, I don't Your Honor.

8        THE COURT:  Okay.  Then I'm not going to award

9    any attorney -- additional attorney's fees because I

10   don't --

11       ATTY. PICARD:  That's fine, Your Honor.

12       THE COURT:  -- don't know what the -- breakdown.

13       ATTY. PICARD:  Well, I don't have it with me,

14   Your Honor.  I mean, Attorney St. Pierre has -- had

15   extensive hearings at the bankruptcy court.  I just

16   don't have her breakdown with me.

17       THE COURT:  Yes.  Right.

18       ATTY. PICARD:  That's fine.  We can deal with

19   that another point.

20       THE COURT:  Okay.  Okay.  What date are you

21   looking for, Attorney Picard?

22       ATTY. PICARD:  June 24th.

23       THE COURT:  Attorney Sank.

24       ATTY. SANK:  No position.

25       MS. CONRAD:  Do I have a position?

26       THE COURT:  Sure.  It's already -- Ms. Conrad,

27   you may.

1    MS. CONRAD:  I'm -- I'm still involved in

2    bankruptcy court so I want to, you know, and that was

3    my -- that's been my major attention.  This was just

4    -- so I want to be able to complete everything there.

5    THE COURT:  Okay.  You understand the stay was

6    lifted in bankruptcy court; the bankruptcy court said

7    the plaintiff could come back here --

8    MS. CONRAD:  So, I mean, after --

9    THE COURT:  -- and proceed with the foreclosure.

10    MS. CONRAD:  After you set a sale date can the

11    stay return?

12    THE COURT:  It's -- if the bankruptcy court

13    orders it, yes.

14    MS. CONRAD:  It's possible?

15    THE COURT:  Sure.

16    MS. CONRAD:  July.

17    THE COURT:  Okay.

18    ATTY. SANK:  Your Honor, I'll just -- I'm just

19    doing the math.  I think June 24th might be a little

20    tight for a committee to find out they're appointed

21    and do their work.

22    THE COURT:  Well, no, it doesn't --

23    MS. CONRAD:  July --

24    THE COURT:  -- give enough time to --

25    ATTY. SANK:  Yeah.

26    THE COURT:  The twenty days, appeal period has

27    to run.  So it's --

1          ATTY. SANK:  Right.

2          THE COURT:  That would be June 6th.  And then it

3  needs to be at least forty-five days from there.

4          ATTY. SANK:  Right.

5          THE COURT:  So -- okay.  Anything else?  All

6  right.  The Court's going to enter a judgment of

7  foreclosure by sale with a sale date of August 5,

8  2017 with our standard orders.  Thank you.  Good

9  luck.

10         MS. CONRAD:  Thank you.

11    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

```
NO:  FST-CV08-5008432-S        :  SUPERIOR COURT

US BANK NATIONAL               :  JUDICIAL DISTRICT
                                  STAMFORD/NORWALK

v.                             :  AT STAMFORD, CONNECTICUT

CONRAD, ELIZABETH ET AL        :  MAY 15, 2017
```

## C E R T I F I C A T I O N

I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of Stamford/Norwalk, Stamford, Connecticut, before the Honorable Douglas Mintz, Judge, on the 15th day of May, 2017.

Dated this 13th day of July, 2017 in Stamford, Connecticut.

Rebecca Schalk
Court Recording Monitor